UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOHN MICHALEK,

    Plaintiff,

vs.                                                         CIVIL NO.:  05-CV-72195-DT

COMMISSIONER OF                              HON. NANCY G. EDMUNDS
SOCIAL SECURITY,                                MAG. JUDGE WALLACE CAPEL, JR.

    Defendant.
_____/

## REPORT AND RECOMMENDATION

### I.  RECOMMENDATION

It is recommended that the Court grant Plaintiff's Motion for Summary Judgment, deny Defendant's Motion for Summary Judgment, and remand this case for an award of benefits consistent with this Report.

### II.  REPORT

This is an action for judicial review of the Defendant Commissioner's final decision denying Plaintiff's application for disability insurance benefits [DIB]. Plaintiff filed his application for benefits on February 13, 2003, alleging that he has been disabled and unable to work since April 1, 1996, due to "lower back and right knee [sic] had surgery on both, emphysema." (TR 50-52, 60).[1] The Social Security Administration denied benefits initially on April 1, 2003. (TR 32-36). A de novo hearing was held on July 16, 2004, before ALJ Kathryn Burgchardt. (TR 136-75). In a decision dated November 17, 2004, the ALJ found that Plaintiff was not disabled. (TR 26-31). The Appeals Council

---

[1] Previously, on October 23, 1996, Administrative Law Judge [ALJ] Martin K. Magid issued a partially favorable decision to Plaintiff. (TR 14-20).

1

denied a request to review the decision on May 5, 2005. (TR 4-7). The Plaintiff has commenced this action for judicial review.

### A.     TESTIMONY

Plaintiff testified that he filed his application on January 21, 2003, and stated that he became disabled as of April 1, 1996. (TR 138). His last date insured was in March 2001. Id. He stated that he was born November 8, 1949, and was fifty-four at the time of the hearing. (TR 142).

He testified that he graduated from high school, and that he had some training through Ford Motor Company. (TR 142-43). Plaintiff stated that he was not currently working and last worked in October 1993. (TR 143). He said that he began receiving workers compensation benefits sometime around 1997. Id. He explained that he was injured on the job on or around September 10, 1993, and stopped working permanently on October 13, 1993. Id.

> Plaintiff stated that he doesn't sleep well and has to
>
> lay with pillows under my legs, pillows under my back, and it's just a - - it's like all night long, tossing and turning. And then because I'm not doing nothing during the day [sic], I'm - - how can I explain it to you? You know, if you're not staying physically busy, you get from not having sleep with the pain [sic] - - I can't walk nowhere. My legs are numb, and I'm off balance all the time. Around the house, if I go outside and go to the mailbox because I live out in Belleville, I made myself a walking stick to walk with because my left leg is constantly numb, am my right knee - - and actually my right knees are starting to hurt because everything I do I have to bend down using my knees to do it. Now, I can't bend at all from the back and lift nothing up. If I lift anything, I feel compression instantly in my back.

(TR 144). Plaintiff testified that he lives in a house with his wife. (TR 158). He stated that he gets up at five or six in the morning and goes to bed at eleven in the evening. (TR 144, 159). He stated that he wakes up nauseous. (TR 144). He stated that he has been that way his whole life because he grew up on a farm. (TR 159).

Plaintiff testified that one of his main concerns is his ongoing problem with his back from a lumbar spine laminectomy in December 1993. (TR 144-45). He also reported a problem with knee pain and emphysema. (TR 145). He explained that these have been his main complaints prior to 2001. (TR 144-45, 149-50).

He stated that he has trouble breathing even when he is sitting down. Id. He stated that he never smoked, but he has always worked in dirty and dusty places. (TR 145, 149). He added that he thinks his spinal problems may be related to his breathing problems because sometimes he has to lay flat to breathe properly and he feels like all his muscles are "locked up." (TR 145). He reported that he has had therapy and spinal epidurals. Id.

He reported that he can stand for about ten minutes and walk a couple hundred feet comfortably. (TR 145-46). He stated that he cannot sit very long. (TR 146). For example, after sitting for about five to ten minutes and bending forward to use his wife's computer, he has to lay down. (TR 146). He stated that lying down relieves his pain and when he was in physical therapy, he would have to come home afterward to lay down. Id.

Plaintiff stated that his symptoms have been constant since 1996. (TR 146). However, he explained that his pain has gone from maybe a nine to a ten. (TR 147). He stated that he cannot drive or go up north and he would have to stop and get out of the vehicle to stretch if he traveled because he cramps up. Id.

He stated that he can lift a gallon of milk and a bag of flour, but cannot lift a can of gas. Id. He stated that he does do some cooking and is able to pick up a piece of paper. (TR 147-48).

Plaintiff described his difficulty with breathing. (TR 148). He explained that he feels like someone is sitting on his chest and he cannot get air. Id. He said it as if he takes his hands and lifts

3

them up to take weight off his spine, then he is able to breathe. Id. He stated that his breathing has worsened. (TR 148-49).

He stated that both his legs are weak. (TR 150). He stated that he has to sleep with pillows under his legs. Id. He reiterated that he tosses and turns all night and he has not slept in the same bed with his wife since 1997. Id. He stated that some days are better as it relates to his leg pain. Id.

Plaintiff stated that between 1996 and 2001 his hobbies included watching television and the news all the time. Id. He stated that he used to fish and hunt, but can no longer do that. Id. He then clarified that he stopped hunting because he cannot walk around. (TR 151, 153). He stated that "if [he] go[es] down and drive[s] and sit[s] on the bank," he can fish, but he has to go with his brother. Id. He testified that he no longer does anything by himself anymore. (TR 151). He stated that he still likes to read the newspaper. Id.

He testified he would walk for about five minutes on a treadmill at about a mile and a half an hour at the pain clinic. (TR 151). He stated that he also has a treadmill at home and has tried using it, but was unable to because of his back pain. (TR 151-52).

Plaintiff stated that he does drink beer occasionally in the summer on a social level. (TR 152). He stated that he has a driver's license and he drives a pickup. Id. He indicated that he cannot drive or ride in his wife's car because it is too low to the ground. Id.

He stated that he does not have family outings or visits. (TR 153). He explained that he is always at home. Id. Since 1996, he stated that his activity level has declined. Id.

Plaintiff stated that from 1996 to 2001, Dr. Mikesell was his family doctor, but is now deceased. Id. He reported that his neurosurgeon was Dr. Sarkisian, but he has since retired and Dr. Rotter has taken over the practice. Id. Plaintiff went to see Dr. Rotter in March or April of 2003,

4

because his pain was unbearable. (TR 154). Dr. Rotter told him that he would not operate on him because as Plaintiff reported, he had nothing left to operate on. Id.

Plaintiff reported that he currently takes Vicodin, Advil, arthritis medication, and blood pressure medication. Id. He reported that he does not take the Vicodin all the time because it makes him sleep the whole day, so he takes Advil in place of same. Id. He stated that he started taking the arthritis medication the year prior to his hearing as prescribed by Dr. Rotter as well as the blood pressure medication as prescribed by his family doctor. (TR 155). He stated that he had a heart catheterization, but it did not show any problems with his heart. Id. He stated that he only has the high blood pressure as it relates to same. Id.

He stated that from 1996 to 2001, he took different medications. (TR 154). He stated that he did not take the arthritis or blood pressure medications. Id. He reported taking primarily anti-inflammatory medications. Id. However, he reported that he did take Vicodin during that time. (TR 155). He explained that the anti-inflammatory medications cause him to have problems with his digestive system. Id. He explained that he had to have a hemorrhoid operation. Id.

Plaintiff stated that he does not go to counseling, nor did he seek counseling during the period between 1996 and 2001. (TR 155-56). He stated that he did have physical therapy and pain injections during that time period. (TR 156).

Plaintiff discussed his previous work history. (TR 156-58). He stated that he started working for Ford Motor Company on February 19, 1968, until 1977 when he went to work at Metro Airport. (TR 156). He stated that a year later he was hired in at General Motors on September 11, 1978. Id. He stated that he worked there doing various jobs until 1993. (TR 156-57). He reported driving a high-low, being a crater packer, and sawing wood. (TR 157).

5

He stated that he drove the high-low occasionally to avoid being bumped to another shift. Id. He stated that the crater packer position required him to pick up stock, too. Id. He stated that when he was not picking up stock, he had to pack forty to sixty pound torque converters to be shipped. (TR 157-58). He stated that when he had to saw wood, he picked up sixteen foot two-by-fours and cut them to dimension. (TR 157).

Plaintiff stated that from 1996 to 2001, he would not have been able to do any of his previous work. (TR 158). He explained that he would not be able to drive the high-low because it has no suspension and that he would not be able to bend for the other positions. Id. He stated that he used to work in a six foot pit and he is only six foot, five inches tall. Id.

When asked about the time period from 1996 through 2001, he stated that a lot of times he could not dress himself. (TR 159). He stated that he needs help with his socks and shoes. Id. He reported that when he shaves in the morning he has to lift his right leg up and set it on the sink to relieve pain and numbness in his legs. Id. He explained that he cannot stand straight up and tilt forward without pain and/or numbness. Id.

He stated that he can cook and wash clothes, but they do not have a lot of laundry. (TR 159-60). He stated that he handles the bills and his wife does the grocery shopping. (TR 160). He stated that he cannot do housecleaning, dusting, or vacuuming. Id. He stated that his wife also does the dishes after he cooks, but he puts things away in the cabinets. Id. He summarized that he cannot do anything anymore that he used to, such as cut firewood, sell firewood, and farm. Id. He reported that he sits and watches the cars go by, watches the news, and does some household chores. Id.

Plaintiff testified that he stopped working in 1993 when he injured himself, and then had the laminectomy. (TR 161). He explained that he was on medical leave until 1996, so he waited to file his

claim. Id. He stated that General Motors would not let him back to work even with restrictions because of a report from the U of M. (TR 162).

>Plaintiff's counsel asked whether he would be able to do a job with
>
>[n]o lifting - - let's say the lifting was under 10 pounds and you did inspection work. But the requirement would be that you'd have to come in and work here, you know, six to eight hours a day, five days a week. You couldn't lay down when you wanted to lay down, you couldn't take breaks when you needed to, but you'd have to work. Let's say they gave you a typical break of 15 minutes in the morning, 15 in the afternoon, and a lunch break.

(TR 163). Plaintiff testified that he would not be able to perform such a job because he has to take breaks and cannot do repetitive work. Id. Counsel asked whether a job with a sit or stand option and no need to bend down would accommodate Plaintiff's limitations. (TR 164). He stated that he could not do same because he has to work at his own pace and he cannot do "anything all at one time." Id. He explained that he is limited by the pain in his back and the weakness in his legs. Id. He reiterated that he is nauseous almost everyday when he wakes up and cannot get going until nine or ten in the morning. Id.

Plaintiff testified that he needs to lay down during a typical day and it helps to relieve his pain. Id. He stated that he has been doing this since he was first injured. Id. He stated that he lays down for a couple hours almost every afternoon and sometimes in the morning as well. (TR 165).

### B.   MEDICAL EVIDENCE

Examination of the parties' cross-motions for summary judgment reveals that an additional recitation of the Plaintiff's medical evidence would be repetitive. The pertinent record medical evidence relied upon by this Court is fully articulated in the Analysis.[2]

---

[2] See Subpart E, infra, page 10.

### C.     VOCATIONAL EXPERT'S TESTIMONY

Luann Castellana, a vocational expert [VE], testified at the hearing. (TR 165-70). She described Plaintiff's past work: crater packer, heavy and unskilled, and high-low driver, medium and semi-skilled. (TR 166-67). The VE stated that his driving skills would be transferable, but job specific. (TR 167). The ALJ presented a hypothetical question to the VE in which a claimant with Plaintiff's age from 1996 to 2001, education, and work experience

> could only lift or carry 10 pounds frequently or 20 pounds occasionally. This individual could stand or walk with normal breaks for a total of six hours in an eight-hour workday. This individual could sit with normal breaks for a total of six hours in an eight-hour workday. This individual could perform pushing and pulling motions with upper and lower extremities, but with the weight restrictions that I gave you. Additionally, this person should be restricted to a relatively clean work environment, meaning low levels of pollutants and stable temperatures, and this individual could perform the following postural activities occasionally, climbing, stooping, kneeling, crouching, or crawling.

Id. The VE testified that such a claimant would not be capable of Plaintiff's past work, primarily due to physical demands, work environment, and postural abilities. (TR 168). However, the VE testified that the following light unskilled positions exist under these limitations: security, protection service, 3,000 positions; assembly, 5,000 positions; production inspecting, checking, and sorting, 5,000 positions; packaging jobs, 3,000 positions; and cashier, 3,000 positions. Id.

The ALJ presented a second hypothetical based on Exhibit 4F, in which a claimant with Plaintiff's age from 1996 to 2001, education, and work experience, and "could lift or carry only five pounds frequently and 10 pounds occasionally. Additionally, this Claimant could - - is restricted from bending." Id. Further, the ALJ restricted the hypothetical "to a relatively clean work environment." (TR 168-69).

Again, the VE testified that such a claimant would not be capable of Plaintiff's past work, primarily due to physical demands, work environment, and postural abilities. (TR 169). The VE

testified that the following sedentary jobs could be performed by Plaintiff: surveillance system monitors and security reception, 2,000 positions; inspecting, checking, and sorting, 1,500 positions; assembly, 2,500 positions; packing, 1,500 positions; and telephone marketing, 2,000 positions. (TR 169-70).

The ALJ proposed a third hypothetical involving a claimant with Plaintiff's age from 1996 to 2001, education, and work experience, with the assumptions that all of the Plaintiff's testimony was credible and he needed to lay down frequently throughout the day beginning in 1996. (TR 170). The VE testified that such an individual would not be able to perform any jobs in our current labor market due to the need to lay down and rest frequently. Id. The VE stated that her testimony was consistent with the Dictionary of Occupational Titles. (TR 166, 170). Plaintiff's counsel declined to question the VE. Id.

### D.    ALJ'S CONCLUSIONS

After reviewing the testimony presented at the hearing and the medical evidence in the record, the ALJ found that "[t]he claimant's major problems relate to status post laminectomy." (TR 27, 30). Although he has an impairment that is severe within the meaning of the Regulations, he does not have an impairment or combination of impairments set forth in Appendix 1, Subpart P, Regulations No. 4. Id. The ALJ found Plaintiff's testimony not to be credible. Id. She determined that Plaintiff had the following residual functional capacity from October 24, 1996, to March 31, 2001:

> the claimant could not lift or carry more than 10 pounds frequently and 20 pounds occasionally (from very little, up to one third of an eight hour workday). He could not stand and/or walk (with normal breaks) more than a total of six hours in an eight hour workday and could not sit (with normal breaks) more than a total of six hours in an eight hour workday. He could perform pushing and pulling motions with his upper and lower extremities within the aforementioned weight restrictions, and he should be restricted to a "relatively clean" work environment (low levels of pollutants and stable temperatures). He could perform each of the following postural activities occasionally:

climbing, stooping, kneeling, crouching, or crawling. He was restricted to a wide range of light exertional work.

(TR 28-29, 30). Thus, the ALJ concluded that Plaintiff is not eligible for disability. (TR 29, 31).

### E.  ANALYSIS

Plaintiff advances one main claim in his Motion for Summary Judgment. Plaintiff's Motion argues that the ALJ's decision is not supported by substantial record evidence because the doctrine of res judicata/collateral estoppel applies to the previous ALJ's finding on October 23, 1996, that Plaintiff was capable of sedentary work, absent a showing of improvement in Plaintiff's condition.[3] In response, Defendant's Motion for Summary Judgment contends that the ALJ's decision is supported by substantial evidence.[4] The matter is now ready for decision.

#### 1.  Standard of Review

This Court's review of the ALJ's conclusions is limited. The findings of the ALJ regarding Plaintiff's disabled status are conclusive if supported by substantial evidence based on the record as a whole. 42 U.S.C. § 405(g) (1997). Substantial evidence means such evidence as a reasonable mind might accept as adequate to support a conclusion. Richardson v. Perales, 402 U.S. 389, 401 (1971). It is more than a scintilla of evidence, but less than a preponderance of evidence. Brainard v. Secretary of Health and Human Servs., 889 F.2d 679, 681 (6th Cir. 1989). This standard presupposes that there is a "zone of choice" within which the ALJ may make a decision without being reversed. Felisky v. Bowen, 35 F.3d 1027, 1035 (6th Cir. 1994). Even if the court might arrive at a different conclusion,

---

[3] Plaintiff's Motion for Summary Judgment and Brief filed August 31, 2005 (hereinafter "Plaintiff's Brief"), at pages 4-13.

[4] Defendant's Motion for Summary Judgment and Brief filed October 24, 2005 (hereinafter "Defendant's Brief"), at pages 5-11.

an administrative decision must be affirmed if it is supported by substantial evidence. Mullen v. Bowen, 800 F.2d 535, 545 (6th Cir. 1986). Finally, consideration of the whole record does not mean that the ALJ must mention or comment on each piece of evidence submitted. Black v. Apfel, 143 F.3d 383, 386 (8th Cir. 1998). Applying these standards, I will analyze Plaintiff's claim.

### 2. Discussion

Both parties agree that absent a showing of improvement, the present ALJ was bound by the previous ALJ's finding that Plaintiff was limited to sedentary work. As Defendant states,

> the Sixth Circuit has held that the Commissioner is bound by a previous RFC determination with respect to the same claimant absent "changed circumstances." See Pl.'s Br. at 5-9, citing Drummond v. Sec'y of Health and Human Servs., 126 F.3d 837, 842 (6th Cir. 1997). As Plaintiff further notes, this requires the ALJ to find that he experienced medical improvement in order to find him able to perform more than the sedentary work which was previously determined to be the most he was capable of performing. Pl.'s Br. at 6.[5]

However, the parties disagree regarding whether there was an improvement in Plaintiff's condition.

---

[5] Defendant's Brief at page 8.

Defendant argues that there was little evidence of record before the ALJ to determine during the relevant time period, October 24, 1996, through March 31, 2001.[6] Defendant argues that the absence of information may support an ALJ's disability determination.[7] Thus, we have a conflict of burdens.

> A social security disability claimant bears the ultimate burden of proof on the issue of disability. Myers v. Richardson, 471 F.2d 1265, 1267 (6th Cir.1972); accord Crosby v. Schweiker, 650 F.2d 777, 778 (5th Cir.1981) (per curiam). The claimant's specific burden is to prove that he was disabled on or before the last date on which he met the special earnings requirement imposed by the Social Security Act. See Tremblay v. Secretary of H.H.S., 676 F.2d 11 (1st Cir.1982). . . . While it is true that the burden of persuasion on the issue of disability always rests with the claimant, the burden of going forward with evidence on the issue shifts between the parties from time to time. For example, once a claimant has presented a prima facie case of total and permanent disability for his usual job the burden shifts to the Secretary to go forward with evidence that the claimant has the residual capacity for substantial gainful activity. Richardson v. Secretary of H.H.S., 735 F.2d 962, 964 (6th Cir.1984). This circuit, however, recently held that the Secretary has the burden of coming forward with evidence that a claimant's condition improved after an initial determination of disability in cases involving the termination of disability benefits. Haynes v. Secretary of H.H.S., 734 F.2d 284, 288 (6th Cir.1984). In so holding we recognized that a presumption of continuing disability arises from the initial determination of disability, and that, in the absence of evidence that the claimant's condition had improved, the claimant would be deemed to be still disabled. Id. at 288; accord Dotson v. Schweiker, 719 F.2d 80, 82

---

[6] Defendant's Brief at pages 8-10.

[7] Defendant's Brief at pages 9-10.
See Villareal v. Sec'y of Health and Human Servs., 818 F.2d 461, 464 (6th Cir. 1987) (taking note of the claimant's failure to submit further evidence to substantiate his claimed impairment); Beavers v. Secretary of Health, Educ. and Welfare, 577 F.2d 383, 385 (6th Cir. 1977) (lack of evidence supported Agency's decision finding claimant not disabled); see also Geiger v. Sec'y of Health and Human Servs.,1986 WL 18397, at **1 (6th Cir., Nov. 7, 1986) (substantial evidence supporting the Agency's decision may be found in the "lack of evidence" produced by claimant) (copy attached); Ortiz v. Sec'y of Health and Human Servs., 955 F.2d 765, 769 (1st Cir. 1991) (noting infrequency of claimant's treatment for his back and viewing the gaps in the medical evidence as "evidence"). Here, the ALJ specifically noted that the record reflected that Plaintiff barely sought any medical attention at all for his impairments during the relevant period (Tr. 29).

> (4th Cir.1983); Kuzmin v. Schweiker, 714 F.2d 1233, 1237 (3d Cir.1983); Iida v. Heckler, 705 F.2d 363, 365 (9th Cir.1983); Simpson v. Schweiker, 691 F.2d 966, 969 (11th Cir.1982) (quoting Rivas v. Weinberger, 475 F.2d 255, 258 (5th Cir.1973)). We do not have before us a situation in which there has been a prior determination of disability. Such a prior determination, however, is not the sine qua non of the presumption of continuing disability. In Hall v. Celebrezze, 314 F.2d 686, 688 (6th Cir.1963), we held that "[o]nce a condition has been shown to exist, there is a presumption, in the absence of proof to the contrary, that it has continued." In Hall, a case in which we reviewed a denial of disability benefits rather than a termination, there was no prior finding of disability. The Fifth Circuit followed Hall in Rivas v. Weinberger, 475 F.2d 255 (5th Cir.1973), when it held that "[o]nce evidence has been presented which supports a finding that a given condition exists it is presumed in the absence of proof to the contrary that the condition has remained unchanged." Id. at 258 (citations omitted).

Richardson v. Heckler, 750 F.2d 506, 509-10 (6th Cir. 1984). In Richardson, "[t]he problem arises in this case because of the ten-year gap in medical evidence from 1953 to 1963, or five years before and after the crucial date." Richardson, 750 F.2d at 509.

Although, neither parties mention the Richardson case, it appears to be on point. In fact, given our facts regarding the prior ALJ's determination of Plaintiff's ability to do sedentary work, the present case appears even stronger than Richardson. The present Plaintiff did have a previous determination. (TR 14-20). Further, Plaintiff testified that his family physician died and his neurosurgeon retired. (TR 153). Plaintiff alleges that this provides an explanation for the "scant" medical evidence.[8]

The present ALJ relied on one opinion by an agency medical consultant regarding the record up to March 31, 2001, to show improvement. (TR 122-29). However, regardless of whether this one opinion by an non-examining physician could constitute substantial evidence, the ALJ fails to acknowledge that "[m]edical evidence of the applicant's condition after the expiration of insured status must be considered because it may be relevant to the earlier medical condition." Wallace v. Comm'r of Soc. Sec., 367 F.Supp.2d 1123, 1134 (E.D.Mich. 2005). See also Martonik v. Heckler, 773 F.2d 236,

---

[8]Plaintiff's Brief at page 7.

240 (8th Cir.1985) (evidence of medical condition after last date insured must be considered if it tends to show claimant's health before that date); Higgs v. Bowen, 880 F.2d 860, 863 (6th Cir. 1988); Ellis v. Schweicker, 739 F.2d 245, 247-49 (6th Cir. 1984); Basinger v. Heckler, 725 F.2d 1166, 1169-70 (8th Cir. 1984); Parsons v. Heckler, 739 F.2d 1334, 1340 (8th Cir. 1984); Halvorsen v. Heckler, 743 F.2d 1221, 1225-26 (7th Cir. 1984) (treating physician's opinion after date last insured is still entitled to significant weight).

> The ALJ does state that
>
> [t]here is medical evidence that the claimant has a worsening lumbar spine condition. Dr. Norma[n] Rotter stated on February 19, 2003 that the claimant has an antalgic gait and tenderness in his left paraspinal muscular area (Exhibit 3F). Ms. Lynne Gallison, a physician's assistant and Dr. Rotter stated on March 5, 2003 that an MRI taken on March 5, 2003 showed extensive degenerative disc disease throughout his lumbar spine with disc herniations at L3-4 and L5-S1 (Exhibit 4f). However, it should be noted that Dr. Rotter stated on February 19, 2003 that the claimant's back was doing well until the past year and especially during the past several months when he began feeling increasing pain. The claimant's back condition began to deteriorate well after his insured status had expired, and the earliest objective medical evidence of this deteriorating condition is dated February 19, 2003, about two years after the claimant's insured status had expired.

(TR 28). The ALJ also noted that he had painful legs after carrying a bag of cement in August 1997, and complained of upper and lower back pain in October 2001. (TR 27).

Further, the ALJ stated, "I do find the claimant to be credible in that his condition has deteriorated since his date last insured, and I have no doubt that he suffers at the current time."[9] (TR 29). She then stated that "I find that from October 24, 1996 to March 31, 2001, the claimant improved

---

[9] However, even though the ALJ finds Plaintiff's testimony prior to his last date insured not fully credible, she fails to give reasons for same. As Social Security Ruling (SSR) 96-7p points out, the ALJ's "determination or decision must contain specific reasons for the finding on credibility. . . to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." See also, Murray v. Comm'r of Soc. Sec., 2004 WL 1765530, *4 (E.D. Mich., Aug. 3, 2004) (slip copy). Plaintiff testified that his condition had worsened since 1996. (TR 146).

enough that he was able to perform a wide range of light exertional work." Id. Additionally, she stated that "[t]here is considerable medical evidence that the claimant has severe and disabling impairments, but that same evidence shows that these impairments began a year to several years from the date he was last insured." (TR 28). It is apparent that the ALJ was not aware that she could consider the evidence after the last date insured pursuant to Sixth Circuit case law. Thus, a remand is necessary.

### 3.     Remand Versus Benefits

The remaining issue is whether remand or an award of benefits is the appropriate remedy for Plaintiff. It is firmly established that under § 405(g), a court may remand for an award of benefits "only if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits." Faucher v. Sec. of Health & Human Servs., 17 F.3d 171, 174 (6th Cir. 1994)(citations omitted). More specifically, "[a] judicial award of benefits is proper only where the proof of disability is overwhelming or where the proof of disability is strong and evidence to the contrary is lacking." Id. (citing Mowery v. Heckler, 771 F.2d 966, 973 (6th Cir. 1985)).

It is clear that the ALJ found that the evidence after the last date insured demonstrated a disabling condition. However, she was unaware of her ability to review same in her determination. Thus, there appears to be no reason to remand for further fact finding. Plaintiff had a lumbar laminectomy in December 1993. (TR 16). The ALJ acknowledged that "[t]here is considerable medical evidence that the claimant has severe and disabling impairments." (TR 28). The ALJ based this on his deteriorating spinal condition. Id.

Further, even if the ALJ for some reason determined that Plaintiff was limited to sedentary work based on Dr. Rotter's findings at Exhibit 4F, (TR 119-21), the ALJ already posed a hypothetical to the VE based on that exhibit. (TR 119-21, 168-70). Thus, with that evidence and due to Plaintiff's

advanced age under 20 C.F.R. § 404.1563(c), he would be entitled to benefits. Therefore, there is no need for further fact finding.

### III. CONCLUSION

For the reasons stated, I respectfully recommend that the court **GRANT** Plaintiff's Motion for Summary Judgment, **DENY** Defendant's Motion for Summary Judgment, and **REMAND** this case to the Defendant Commissioner for an award of benefits consistent with this Report.

Pursuant to Fed.R.Civ.P. 72(b) and 28 U.S.C. § 636(b)(1), the parties are hereby notified that within ten days after being served with a copy of the recommendation they may serve and file specific, written objection within ten days after being served with a copy thereof. The parties are further informed that failure to timely file objections may constitute a waiver of any further right of appeal to the United States Court of Appeals. United States v. Walters, 638 F.2d 947 (6th Cir. 1981).

In accordance with the provisions of Fed.R.Civ.P. 6(b), the court in its discretion, may enlarge the period of time in which to file objections to this report.

                                                          s/Wallace Capel, Jr.
                                                          **WALLACE CAPEL, JR.**
                                                          **UNITED STATES MAGISTRATE JUDGE**

**Dated:**   May 19, 2006

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**

**CERTIFICATE OF SERVICE**

I hereby certify that on May 19, 2006, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to the following:
Janet L. Parker, and Kenneth F. Laritz,

and I hereby certify that I have mailed by United States Postal Service the paper to the following non-ECF participant(s):  the Social Security Administration.

                                                                                      s/James P. Peltier
                                                                                      United States District Court
                                                                                      Flint, Michigan 48502
                                                                                      810-341-7850
                                                                                      E-mail:  pete_peltier@mied.uscourts.gov

17